Omid E. Khalifeh, SBN 267340
Ariana Santoro, SBN 300767
Louise Jillian Paris SBN 347801
**OMNI LEGAL GROUP**
2029 Century Park E, Suite 438
Los Angeles, California 90067
Phone:        310.276.6664
Facsimile:   310.305.1550
omid@omnilg.com
ariana@omnilg.com
jillian@omnilg.com

Attorneys for Plaintiff,
LALTITUDE LLC

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LALTITUDE LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>SHENZHEN JINNUO PRECISION PRODUCTS CO., LTD., a Chinese business entity of form unknown; SHENZHEN WYN-WORLD TECHNOLOGY LTD., a Chinese corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 2:21-cv-9089-GW-MAR<br><br>**PLAINTIFF'S NOTICE OF SUPPLEMENTAL BRIEF TO RENEWED MOTION AND SUPPLEMENTAL BRIEF TO RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW ON THE ISSUE OF DAMAGES; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: June 29, 2023<br>Time: 8:30 a.m.<br>Courtroom: 9D |

**TO THE COURT, ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on June 29, 2023 at 8:30 a.m., or as soon as the matter may be heard in the courtroom of the Honorable George H. Wu, located at United States Courthouse, 350 West 1st Street, Los Angeles, CA, 90013, Courtroom 9D, Plaintiff Laltitude LLC, will, and do, move this Court for an Order granting a reasonable royalty in its favor.

Because Defendants have failed to appear and defend this action, Plaintiff is entitled to equitable relief against Defendants on the claims pleaded in the Complaint: (1) design patent infringement and (2) unfair competition.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, and attached exhibits, the records and files, and any other matter the Court may consider.

RESPECTFULLY SUBMITTED this 21st day of June, 2023.

                                        **OMNI LEGAL GROUP**

                                        /s/ Omid E. Khalifeh
                                        Omid E. Khalifeh
                                        Ariana Santoro
                                        Louise Jillian Paris
                                        Attorneys for Plaintiff,
                                        LALTITUDE LLC

# TABLE OF CONTENTS

I.  INTRODUCTION ………………………………………………...……4

II. STATEMENT OF FACTS ……………………………………………...4

    a. Plaintiff's Patent …………………………………………………..4

    b. Defendants' Infringement …………………………………………4

    c. Procedural Posture ………………………………………………...6

III. LALTITUDE IS ENTITLED TO AN ESTIMATED REASONABLE ROYALTY ……………………………………………………………...7

    a. The Hypothetical Negotiation Framework/Georgia-Pacific Factors...9

    b. Expert Findings ………………………………………………..11

IV. CONCLUSION ………………………………………………………...15

# TABLE OF AUTHORITIES

**Cases**

*Georgia-Pacific Corp. v. United States Plywood Corp.*,

    318 F. Supp. 1116 (S.D.N.Y. 1970)………………………………………9

*Lucent Technologies, Inc. v. Gateway, Inc.*,

    580 F.3d 1301, 1324 (Fed. Cir. 2009)……………………………………7

*Rite-Hite Corp. v. Kelley Co., Inc.*,

    56 F.3d at 1554 (Fed. Cir. 1995)…………………………………………8

**Statutes**

Fed R. Civ. P., R. 55(a)……………………………………………………6

## I. INTRODUCTION

Through this Supplement to its Renewed Motion, Plaintiff Laltitude LLC ("Laltitude") requests that in addition to the entry of judgment by default and permanent injunction against Shenzhen Jinnuo Precision Products Co., Ltd. doing business as Genortek ("Genortek") and Shenzhen Wyn-World Technology Ltd. ("Wyn-World" and collectively, "Defendants"), that the Court order the Plaintiff entitled to a reasonable royalty, in lieu of damages, from Defendant's infringement.

## II. STATEMENT OF FACTS

### a. Plaintiff's Patent

On December 25, 2013, a design patent application for a "Bluetooth shower speaker" was filed with the United States Patent Office (USPTO). On November 3, 2015, the Patent was duly and lawfully issued by the USPTO. The Patent has an anticipated expiration date of November 3, 2029. *See* Dkt. 1 ¶ 13. Plaintiff is the true owner of all rights, title, and interest in the Patent that encompasses the Bluetooth shower speaker design. *Id* ¶ 14

### b. Defendants' Infringement

The success and novelty of Plaintiff's Patent prompted third parties, including Defendants, to manufacture and/or distribute blatant counterfeits of Plaintiff's innovative design to compete with and infringe the Patent. *Id.*¶ 15

Defendants have directly infringed and continue to directly infringe the Patent by making, using, selling, and offering for sale in the United States, and/or importing

into the United States the Infringing Product, embodying the invention defined by one or more claims of the Patent, without authority or license from Plaintiff. More particularly, Defendants have infringed and continue to infringe at least Claim 1 of the Patent because Infringing Product is substantially similar to the design protected by the Patent. *Id.* ¶ 16.

A comparison of the numerous substantially similar, if not nearly identical, ornamental features are apparent with reference to the below chart:

| U.S. Design Patent No. D742,359 | Infringing Product |
|---|---|
| | |
| | |
| | |

Defendants' Infringing product was, and still is manufactured, distributed, and/or offered for sale using a substantially similar design, characteristic, and size as Plaintiff's Patent. *Id.* ¶ 19

5

### c. Procedural Posture

Throughout this litigation, Plaintiff has made diligent efforts to serve Defendants using the methods authorized by the Court. Despite such, Defendants have not responded or appeared before the Court in any manner. Thus, on January 11, 2023, Plaintiff filed a Request for Entry of Default pursuant to Fed R. Civ. P., R. 55(a). *See* Dkt 40. On January 12, 2023, Default by the Clerk of Court was entered as to both named defendants. *See* Dkt. 41.

Plaintiff filed a Motion for Default Judgment on February 10, 2023. *See* Dkt. 45. After the Motion was heard, on March 02, 2024, this Court granted the Motion as to the patent infringement claim, and request for permanent injunction. Plaintiff's request for monetary damages was denied without prejudice, subject to renewal within thirty days if Plaintiff can make a properly supported request. Plaintiff had until April 03, 2023, to file a Renewal Motion. *See* Dkt. 49.

On March 14, 2023, Plaintiff filed a Proposed Judgment and Permanent Injunction for the Court's consideration. On March 22, 2023, the Court issued Judgment finding the Defendants liable for Design Patent Infringement and a Permanent Injunction. *See* Dkt. 51.

On March 28, 2023, Plaintiff filed a Motion for Extension to file the Renewal Motion for Damages. On April 6, 2023, this Court granted Plaintiff an extension of thirty (30) days, or until May 03, 2023, in order to file a properly supported renewal motion. *See* Dkt. 57.

On May 03, 2023, Plaintiff filed its Renewed Motion for Damages with this court, along with an Expert Report as an exhibit. *See* Dkt. 58. The Renewed Motion was heard before this Court on May 25, 2023.

Plaintiff's Motion was continued by this Court to June 29, 2023 at 8:30 a.m., and Plaintiff was given until June 21, 2023 to file its supplemental brief. *See* Dkt. 62.

## III. LALTITUDE IS ENTITLED TO AN ESTIMATED REASONABLE ROYALTY

In its Tentative Order, this Court states that "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Moreover, "Plaintiff does not address the due process issue implicated by Rule 54(c), or provide authority that would allow the Court to enter the specific damages requested by Plaintiff." *See* Dkt. 61.

It has long been held that upon a finding of infringement, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." *Lucent Technologies, Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1324 (Fed. Cir. 2009).

In its Complaint and Claim for Relief, Plaintiff requested for an order requiring Defendants to pay to Plaintiff all damages or other monetary relief, including but not limited to all gains, profits, and advantages derived by Defendants as a result of Defendant's infringement of the Patent. *See* Dkt. 1, p. 4, 6, 8. Again in its Motion for Default Judgment, Plaintiff sought reasonable monetary damages. *See* Dkt. 45.

However, in this case, Defendants' default has prevented Plaintiff from accurately determining damages and lost profits. As such, Plaintiff at the minimum, should be entitled to the award of a reasonable royalty. In the Tentative Order issued on March 01, 2023, in response to Plaintiff's Motion for Default Judgment, this Court cites Section 284 of the Patent Act: "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, *but in no event less than a reasonable royalty* for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284." (emphasis supplied.) *See* Dkt. 48, p. 8. Moreover, "Where a patentee cannot prove lost profits, the patentee is entitled to a reasonable royalty. *See Rite-Hite Corp.*, 56 F.3d at 1554." *Id.* at p.10.

### a. The Hypothetical Negotiation Framework/ The Georgia-Pacific Factors

In *Georgia-Pacific Corp v. United States Plywood Corp* ("*Georgia-Pacific*"), the court held that a reasonable royalty should reflect various factors ("*Georgia-Pacific* Factors") that would have been considered by a willing licensor and a willing licensee if both had been reasonable in trying to reach an agreement. *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), modified, 446 F.2d 295 (2d Cir. 1970), cert. Denied, 404 U.S. 870 (1971).

Under *Georgia-Pacific*, a court can consider the following of factors in determining what a reasonable royalty rate should be:

    i. The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

    ii. The rates paid by the licensee for the use of other patents comparable to the patent in suit.

    iii. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

    iv. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly

    v. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter

    vi. The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

    vii. The duration of the patent and the term of the license.

    viii. The established profitability of the product made under the patent; its commercial success; and its current popularity.

    ix. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

    x. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

    xi. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

    xii. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

   xiii. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

   xiv. The opinion testimony of qualified experts.

   xv. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee -- who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention -- would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license. *Georgia-Pacific Corp.,* 318 F. Supp. at 1120.

 **b. Expert Findings**

Plaintiff's damages expert has examined the *Georgia Pacific* Factors with respect to the subject of this litigation and assumed a hypothetical negotiation scenario between Plaintiff and Defendant. *See Ferri* Report, Dkt. 58, Exh. A.

*Ferri* finds that, based on analysis of a hypothetical negotiation for a license between Plaintiff and Defendant and according to the *Georgia-Pacific* factors, the reasonable royalty for non-completive channels would be between 4.6% to 7.2% and the reasonable royalty rate for competitive channels, such as Defendant's channels herein, would be between 8.4% to 17%. *Id*. p.18.

In addition to the initial report, *Ferri* submits a Supplemental Report to further support Plaintiff's request for reasonable royalties and in response to this Court's May 23, 2023 Tentative Order (Dkt. 61). *See Ferri Supplemental Report,* Exh. A.

This Court, in its Tentative Order, states that "Plaintiff does not explain why, with this small number of factors purportedly exerting upward pressure on the royalty rate (four out of eleven), the topmost rate in Ferri's range, *i.e.*, 17% should be applied. This is especially concerning where Ferri concludes that the net upward pressure would result in a 'reasonable royalty [] toward the *middle or upper* end of the ranges presented in th[e] report." *See* Dkt. 61, p. 4

Indeed, Plaintiff in its initial Renewed Motion for Damages, had requested this Court for a reasonable royalty rate of 17%, reflecting the upper end of *Ferri's* range. *See* Dkt 58, p. 10-11. According to *Ferri's Supplemental Report,* "**12.7% would be a reasonable and conservative royalty rate as the middle of the ranges of rates evaluated in this case for competitive channels.**" *See Ferri Supplemental Report* at p. 4. Given this, Plaintiff respectfully requests 12.7% as a reasonable royalty. "This

reasonable royalty rate of 12.7% would be acceptable to Laltitude in the hypothetical negotiation given that the Product-at-Issue was sold in competitive channels and given the net upward pressure of the GP factors. Further, based on the evidence available, this rate would also be sufficient to ensure that Defendants 'would be able to make a reasonable profit'" *Id.* at p.4-5.

The Tentative Order states that "the Court finds Plaintiff's source regarding the average review rate for Amazon "insufficient to prove Defendants' sales, and therefore Ferri's estimated sales number is unreliable." *See* Dkt. 61, p. 3

In response, *Ferri's* Supplemental Report "evaluates data from multiple sources and studies reporting on Amazon review rates, including sources with expertise in analyzing data related to selling online products." *See Ferri Supplemental Report* at p.1.

> "The total number of Amazon reviews for the Product-at-Issue are calculated conservatively as the maximum of the reviews for the Product-at-Issue from the available screenshots. The total number of Amazon reviews is conservatively estimated to be **1,540**.[6] See Exhibits C-1 and C-2.
>
> This Supplemental Report considers multiple studies on the average review rate for Amazon sellers, and it finds that a reasonable range for the ratio of reviews to units sold is from **1.0%** on the low end, **1.6%** as the mid-range estimate, and **2.6%** on the high end. See Exhibit C-3. Due to the variation among the six sources considered, the averages of each of the low, mid, and high ranges are reasonable estimates for the relationship between reviews and units sold for Defendants' products. The estimates from these sources are relevant for the Product-at-Issue for multiple reasons including but not limited to: (1) the sources have particular expertise in analyzing data related to selling online products (like the Product-at-Issue), (2) the sources specifically relate to Amazon reviews and Amazon products (like the Product-at-Issue), and (3) the sources were published in recent years (2020 to present), similar to the time period during which the accused sales were taking place.

> To calculate the total estimated accused units, the average Amazon review rates are applied to the total number of Amazon reviews for the Product- at-Issue. The total estimated accused units are **58,481** on the low end, **94,769** as the mid-range estimate, and **159,310** on the high end. See Exhibit C-1. A range of values for estimated accused units is presented for the Court to consider in determining the reasonable royalty.
>
> To calculate estimated accused sales, the total estimated accused units are multiplied by the weighted average sales price of **$10.63** as calculated in Exhibit C-2. Estimated accused sales are **$621,436** on the low end, **$1.0 million** as the mid-range estimate, and **$1.7 million** on the high end. See Exhibit C-1. A range of values for estimated accused sales is presented for the Court to consider in determining the reasonable royalty." *Id.* pp.2-3.

Based on the evaluation of data by *Ferri*, a reasonable royalty rate is to be applied to the estimated accused sales which range from 621,436-1,692,878 units. *Id.* at p. 3, Exh. C.

The Tentative Order states that the "Initial Ferri Report does not distinguish whether the royalty rates as evaluated under GP Factor 12 should be applied to the assumed selling price per unit or net profit per unit.". *See* Dkt. 61, p. 4. *Ferri* clarifies that the royalty rate should be applied to the "selling price" of the accused units. *See Ferri Supplemental Report* at p.3.

Applying the foregoing, the estimated accused sales by Defendant, multiplied by the royalty rate, results in "reasonable royalty damages ranging from $51,914 on the low end, $127,662 as the mid-range estimate, and $287,789 on the high end." While the *Supplemental Report* provides a range for this Court's consideration, *Ferri* suggests that "the mid-range estimate of $127,662 would be a reasonable and conservative outcome". *Id.* pp.8-9

### IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant an award for a reasonable royalty rate of 12.7% and a reasonable royalty of $127,662.00 as set forth in the above and in the proposed order.

RESPECTFULLY SUBMITTED this 21st day of June, 2023.

**OMNI LEGAL GROUP**

/s/ Omid E. Khalifeh
Omid E. Khalifeh
Ariana Santoro
Louise Jillian Paris
Attorneys for Plaintiff
LALTITUDE LLC