## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 21-9089-GW-MARx | Date | June 28, 2023 |
|---|---|---|---|
| Title | *Laltitude LLC v. Shenzhen Jinnuo Precision Products Co., Ltd., et al.* | | |

| Present: The Honorable | **GEORGE H. WU, UNITED STATES DISTRICT JUDGE** | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS :**  IN CHAMBERS - TENTATIVE ORDER ON PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW ON THE ISSUE OF DAMAGES [58]

Attached hereto is the Court's Tentative Order on Plaintiff's [58] set for hearing on June 29, 2023 at 11:30 a.m.

|  |  : |
|---|---|
| Initials of Preparer | JG |

<u>*Laltitude LLC. v. Shenzhen Jinnuo Precision Products Co., Ltd. et al,*</u> Case No. 2:21-cv-09089-GW-MAR
Second Tentative Ruling on Plaintiff's Renewed Motion for Damages

I. **INTRODUCTION**

Before the Court is Plaintiff Laltitude LLC's renewed motion ("Laltitude" or "Plaintiff") for damages against Defendants Shenzhen Jinnuo Precision Products Co., Ltd. d/b/a Genortek ("Genortek") and Shenzhen Wyn-World Technology Ltd. ("Wyn-World" and collectively "Defendants"). *See* Docket No. 58 ("Motion"). In the context of entry of default judgment, Plaintiff renews its motions for monetary relief, this time requesting a reasonable royalty instead of lost profits. *See generally id.*

On November 19, 2022, Plaintiff filed its Complaint. Docket No. 1 ("Compl."). The Court granted Plaintiff's Motion of Alternative Service of Process, authorizing service via electronic mail, and Defendants were properly served. Docket Nos. 36-38. Any response to the Complaint was due on January 2, 2023, but no Defendant appeared and no answer or motion was filed. Accordingly, on January 11, 2023, Plaintiff requested that the Clerk enter default and default was entered. Docket Nos. 40, 41. Plaintiff timely filed a motion for default judgment, which the Court granted-in-part on March 2, 2023. *See* Docket No. 49 (minutes). The Court granted default judgment and entered an injunction, but with respect to damages, the Court ruled that Plaintiff failed to provide sufficient support for its proposed damages calculations of $2,223,929 in lost profits to allow the Court to find it reasonable. Docket No. 48 at 8-9.; *see also* Docket No. 51 (permanent injunction). Nonetheless, the Court granted leave to file a renewed motion that was properly supported. *Id.* at 9. Plaintiff filed its renewed motion for damages. Docket No. 58. Defendants have not opposed the Motion or otherwise appeared in this case. The Court issued a tentative ruling and held a hearing on the Motion on May 25, 2023. *See* Docket Nos. 61 (tentative ruling), 62 (minutes). In the tentative ruling, the Court explained several reasons why Plaintiff's request for a reasonable royalty was deficient. See Docket No. 61 at 3-5. Based on these observations, at the hearing, Plaintiff requested an opportunity to file a further supplemental brief attempting to correct the deficiencies. The Court granted the request and Plaintiff has filed its further Supplemental Motion. *See* Docket No. 63.

For the reasons stated below, the Court would **GRANT** the Motion.

1

## II. BACKGROUND

In this patent infringement action, Plaintiff filed suit against Defendants for infringing U.S. Patent No. D742,359 ("the D359 Patent"), which discloses the ornamental design for a Bluetooth shower speaker. *See* Docket No. 1-1. Plaintiff holds all rights to the D359 Patent. Compl. at ¶¶ 1, 4. Defendants are Chinese business entities with principal places of business in Shenzhen, China. *Id*. at ¶¶ 5-6. Plaintiff alleges that Defendants' Bluetooth shower speakers ("Accused Products") sold on Amazon.com have a substantially similar ornamental design. *Id*. at ¶ 2. Plaintiff alleges that Defendants have and continue to "directly infringe the Patent by making, using, selling, and offering for sale in the United States, and/or importing into the United States" the Accused Products. *Id.* at ¶ 16.

Since October 27, 2021, Plaintiff filed several takedown notices against Defendants' Accused Products. *Id*. at ¶ 19. The notices were unsuccessful and Defendants continue to sell the Accused Products. *Id*. at ¶ 20. As stated, the Court granted default judgment and entered a permanent injunction. Plaintiff now moves for monetary relief in the form of a reasonable royalty. *See generally* Docket Nos. 58, 63.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 55(b) authorizes a district court to grant default judgment after the Clerk of the Court enters default under Rule 55(a). Fed. R. Civ. P. 55(b). Upon the Clerk's entry of default, the factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party. *See* Fed. R. Civ. Proc. 8(b)(6); *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). It is well-established that a plaintiff must independently "prove-up" the amount of damages sought in the complaint. *Geddes*, 559 F.2d at 560.

Section 284 of the Patent Act provides: "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. Where a patentee cannot prove lost profits, the patentee is entitled to a reasonable royalty. *See Rite-Hite Corp.*, 56 F.3d at 1554 ("A patentee is entitled to no less than a reasonable royalty on an infringer's sales for which the patentee has not established entitlement to lost profits."); *see also Georgia-Pacific v. United States Plywood*, 318

F. Supp. 1116 (S.D.N.Y. 1970) (setting forth factors to evaluate in the reasonable royalty analysis).

IV. **ANALYSIS**

To cure the deficiencies identified in the Court's prior order and tentative ruling, Plaintiff has submitted an expert report from Mickey A. Ferri, Ph.D, and a Supplemental Report from Ferri. *See* Docket No. 58-1, Ex. A, Ferri Report; Docket No. 63-1, Ex. A, Supplemental Ferri Report. In his Supplemental Report, Ferri opines that, "[b]ased on the analysis throughout the Initial Ferri Report and this Supplemental Report, and consistent with the opinion in the Initial Ferri Report that 'the resulting reasonable royalty is toward the middle or upper end of the ranges,' 12.7% would be a reasonable and conservative royalty rate as the middle of the range of rates evaluated in this case for competitive channels." Docket No. 63-1 at ¶ 6.

Plaintiff asserts that, considering Ferri's analysis of "the estimated accused sales by Defendant, multiplied by the royalty rate, result[ing] in reasonable royalty damages ranging from $51,914 on the low end, $127,662 as the mid-range estimate, and $287,789 on the high end," the Court should enter "an award for a reasonable royalty rate of 12.7% and a reasonable royalty of $127,662.00." Docket No. 63 at 14-15 (assuming 94,679 units sold, a weighted average sales price of $10.63 per unit, and a reasonable royalty rate of 12.7%).[1]

The Court finds that, considering Plaintiff's supplemental submission, Plaintiff has carried its burden to prove up the appropriate amount of damages in the form of a reasonable royalty payment. *See Geddes*, 559 F.2d at 560. To reach this conclusion, the Court addresses the issues identified with the Ferri Report in view of the new information provided in the Supplemental Ferri Report.

*First*, in the initial tentative ruling, the Court found unreliable Ferri's assumption that Defendants sold at least 210,400 units, because Ferri based that assumption on unverified information provided by Plaintiff's Vice President. *See* Docket No. 62 at 3 (citing Docket No. 58-1 at ¶ 33). To correct this deficiency, Ferri now "evaluates data from multiple sources and studies reporting on Amazon review rates, including sources with expertise in analyzing data related to

---

[1] Based on Ferri's initial report, which assumed 210,400 units sold at $9.97 per unit, with a reasonable royalty rate of 17%, Plaintiff previously requested $356,606.96. See Docket No. 61 at 3 (citing Dkt. No. 58-1 at ¶ 33).

selling online products." Docket No. 63-1 at ¶ 2 (analyzing data concerning average review rates for Amazon sellers from DataHawk, SellerApp, Cap Forge, and Landing Cube). From this, Ferri calculates a Low-Medium-High range of average review rates as follows.[2]

|  | Low | Medium | High |
|---|---|---|---|
| Review Rate | 1.0% | 1.6% | 2.6% |
| Extrapolated Units Sold | 58,481 | 94,769 | 159,310 |
| Total Sales (weighted sales price of $10.63 per unit) | $621,653.03 | $1,007,394.47 | $1,693,465.30 |
| Applying mid-range reasonable royalty of 12.8% | $79,571.58 | $128,946.49 | $216,763.55 |

The Court finds that Ferri's reliance on multiple industry sources, as opposed to unverified information provided by Plaintiff's CEO, adequately addresses the units sold deficiency previously identified in the tentative ruling.

*Second*, in the tentative ruling, the Court found the Ferri Report unreliable because it did not identify whether Ferri used "selling price" per unit **or** net profit per unit to calculate the reasonable royalty amount, and why it used whatever measure it chose. *See* Docket No. 61 at 3-4. In the Supplemental Report, Ferri "distinguishes that the royalty rate should be applied to the 'selling price' of accused units" because "the royalty rates evaluated in GP factor 12 include those that applied to net sales or gross sales, (*i.e.*, sales and/or selling price), rather than those that applied to net profit or gross profit." Docket No. 63-1 at ¶ 4.

The Court finds that Ferri's clarification and explanation of how his analysis relates to *Georgia-Pacific* Factor 12 adequately addresses the deficiency previously identified by the Court.

*Third*, in the Tentative Order, the Court noted that the Ferri Report provided a reasonable-

---

[2] Ferri's arithmetic is slightly different, which may be from rounding errors. *Compare* Dkt. 63-1 at ¶ 2.

royalty-rate range of 8.4% to 17.0%, but Ferri never opined that the high-end should apply as Plaintiff suggested. *See* Docket No. 61 at 4. In the Supplemental Report, Ferri "presents a range of damages calculations with a range of reasonable royalty rates for the Court to consider." Docket No. 63-1 at ¶ 5. Based on his analysis overall, Ferri now opines that "12.7% would be a reasonable and conservative royalty rate as the middle of the range of rates evaluated in this case for competitive channels." *Id.* ¶ 6. Ferri explains that "[t]his reasonable royalty rate of 12.7% would be acceptable to Laltitude in the hypothetical negotiation given that the Product-at-Issue was sold in competitive channels (*i.e.*, channels where Laltitude is selling competitive products) and given the net upward pressure of the GP factors," and it "would also be sufficient to ensure that Defendants would 'be able to make a reasonable profit,' consistent with GP factor 15." *Id.* Based on Ferri's updated analysis, Plaintiff now seeks a reasonable royalty using this mid-range rate, applied to mid-range estimated sales (*i.e.*, a reasonable royalty payment of $127,662). *See* Docket No. 63 at 15.

The Court finds that Ferri's clarification and explanation of how he calculated a low-mid-high range analysis, and Plaintiff's adoption of the mid-range thereof, adequately addresses the deficiency previously identified by the Court.

*Fourth*, in the Tentative Order, the Court found the Ferri Report unreliable because it stated that "Defendants did not provide evidence of Non-infringing alternatives," which is "a substitute design that does not infringe on the Design Patent-at-Issue," Docket No. 58-1 at ¶ 31, but it is Plaintiff's burden to show a lack of non-infringing alternatives. *See* Docket No. 61 at 4. In the Supplemental Report, Ferri clarifies that he understands the burden, but was trying to explain why a reasonable royalty would be appropriate even if Plaintiff could not prove lost profits (including by proving the *Panduit* factor of "no non-infringing alternatives"). Docket No. 63-1 at ¶¶ 8-9. In any event, Ferri explains that, even "[s]etting aside the aspect of non-infringing alternatives, the remaining analysis in the Initial Ferri Report of GP factors 9 and 10 related to the economic contribution of the Design Patent-at-Issue to the products in this case, as well as related discussion on the economic benefits of design patents, is sufficient to maintain the conclusion that GP factors 9 and 10 have a slightly upward effect on the royalty rate." *Id.* ¶ 10.

The Court finds that Ferri's clarification and explanation concerning *Georgia-Pacific* Factors 9 and 10 adequately address the deficiency previously identified by the Court.

5

*Fifth*, in the Tentative Order, the Court found the Ferri Report unreliable because he declined to apply apportionment by relying on a statute relating to the alternative design patent remedy of disgorgement of profits. Docket No. 61 at 5 (citing Docket No. 58-1 at ¶ 35). In his Supplemental Report, Ferri clarifies that he "ha[s] been instructed by Plaintiff's counsel that the article of manufacture under 35 U.S.C. § 289 is not relevant here." Docket No. 63-1 at ¶ 11. Thus, Ferri explains that "the calculated reasonable royalty rates would already have a built-in apportionment and reflect the value of the intellectual property, so an additional apportionment analysis beyond what is already accounted for in the royalty rate would not be economically appropriate in this case, and I understand it would not be required." *Id.* ¶ 12.

The Court finds that Ferri's clarification, that his analysis does not rely on an irrelevant statute, and his explanation concerning the comparable license agreements, adequately address the deficiency previously identified by the Court.

*Sixth*, in the Tentative Order, the Court cautioned that, under Federal Rule of Civil Procedure 54(c), "A default judgment must not differ in kind from, *or exceed in amount*, what is demanded in the pleadings." Fed. R. Civ. P. 54(c) (emphasis added). The Court observed that Plaintiff's Complaint does not demand a specific amount of damages. The Court explained, that, although this may not be fatal to Plaintiff's request for damages, Plaintiff does not address the due process issue implicated by Rule 54(c), or provide authority that would allow the Court to enter the specific damages award requested by Plaintiff.

In its Supplemental Brief, Plaintiff argues that "[i]t has long been held that upon a finding of infringement, 'the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.'" Docket No. 63 at 7 (quoting *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009)). This unremarkable observation does not address the Court's due process concerns, however. *Lucent Technologies* was not a default judgment case, and the Court is unaware of any Federal Circuit case holding that the "shall award" language in § 284 renders moot the due process protections of Rule 54(c), which requires a damages award not to "exceed in amount what is demanded in the pleadings." Although not uncommon in patent cases, the Complaint in this action did not specify damages "in [any] amount."

6

Nevertheless, the Court finds that, given the specific and detailed evidence presented by Ferri, including the Supplemental Report addressing the Court's evidentiary concerns, a reasonable royalty payment in the amount of $128,946.49 does not "differ in kind from, or exceed in amount, what is demanded in the pleadings," which stated, "Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to damages for Defendants' infringing acts." Docket No. 1 at ¶ 28. Because § 284 contemplates at least a reasonable royalty, and because Plaintiff has presented specific evidence of what that amount should be in this case, the Court finds that the requested award does not violate Rule 54(c). *See, e.g.*, Docket No. 63-1 at ¶ 14 ("The reasonable royalty is based on both estimated accused sales and the royalty rate," and "[o]verall, the evidence and facts in this case suggest that the mid-range estimate of $127,662 would be a reasonable and conservative outcome for multiple reasons, including but not limited to: (1) it is based on the 'mid' estimate for estimated units which, as discussed above, is conservative, and (2) it is the middle of the range of rates evaluated in this case for competitive channels, which is conservative considering the analysis in the Initial Ferri Report that 'the resulting reasonable royalty is toward the middle or upper end of the ranges presented in this report'").

This ruling notwithstanding, the Court cautions that, through this ruling, it does not sanction a blanket rule that when a patent infringement complaint does not allege specific damages, a specific award may be awarded upon default judgment. This determination will always turn on the facts of the case and a plaintiff's ability to prove up damages that do not differ in kind or exceed in amount that which can reasonably be understood from the damages allegations in the complaint.

Thus, the Court **GRANTS** Plaintiff's request for damages in the form of a reasonable royalty lump-sum payment.

## V. CONCLUSION

For the reasons stated, Plaintiff's renewed Motion for Damages is **GRANTED** (Docket Nos. 58, 63). Plaintiff is awarded a reasonable royalty lump-sum payment of $128,946.49.

**IT IS SO ORDERED**.